IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA BAILY, : Civil Action No. 02CV5153
:
          Plaintiff, :
:
v. :
:
AETNA INC., :
:
          Defendant. :

DEFENDANT AETNA INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

On February 5, 2003, Defendant Aetna Inc. ("Defendant" or "Aetna") moved for summary judgment in its favor on the only count of Plaintiff Lisa Baily's ("Plaintiff") Complaint, based upon the record evidence in this case, the majority of which was Plaintiff's admissions. Pursuant to a stipulation between the parties which was approved by the Court, Plaintiff filed her response to Defendant's motion on March 10, 2003.[1] Plaintiff's brief utterly fails to provide <u>record</u> evidence demonstrating a genuine issue of material fact so as to preclude entry of summary judgment in this case.

Aetna herein incorporates its opening brief in support of summary judgment. Rather than reiterate the numerous reasons it is entitled to judgment in its favor, Aetna will briefly address the legal irregularities and most glaring misstatements of the record contained in Plaintiff's brief, as follows:

    1.    Plaintiff has not set forth her own statement of facts, nor does she disagree with the facts set forth in Aetna's brief. Instead, Plaintiff relies heavily on the

---

[1] The stipulation also provided Aetna the opportunity to file this reply brief.

legal standard for summary judgment and attempts to create issues of fact by injecting speculation and conclusions that lack any record support.[2] For example, Plaintiff speculates that Ms. Maroun's request that Plaintiff call in to work during a seven (7) to ten (10) day period in late August 2001 was motivated by Plaintiff's receipt of STD benefits and was retaliatory (Plaintiff's Brief, at p. 9, 10). The record, however, demonstrates that Ms. Maroun had no involvement in Plaintiff's benefits issues, that Plaintiff's lack of medical documentation in late August 2001 caused her leave to be considered unapproved, and that Ms. Maroun simply wanted to be advised of Plaintiff's work status while her leave was not approved.[3] Plaintiff has not (because she cannot) come forth with any record evidence to support her conclusory statements of retaliation, but rather she relies upon her own subjective speculation in an attempt to contradict the record evidence and establish a claim. It is well-established that Plaintiff's subjective disagreement with Aetna's reasons for the actions in this case (if any) and speculation that some type of retaliation is the true reason for its actions does not support her claim. See Boykins, 78 F. Supp. 2d at 411-12; Mroczek v. Bethlehem Steel Corp., 126 F. Supp. 2d 389, 389-90 (E.D. Pa. 2001) (plaintiff's subjective belief that he was victim of retaliation not sufficient to meet burden of proof).[4]

---

[2] Indeed, Plaintiff's brief contains few citations to the record. Any unsupported allegations are not only legally insufficient to overcome summary judgment, but they should be stricken. See Boykins v. Lucent Techs, Inc., 78 F.Supp. 2d 402, 412 (E.D. Pa. 2000).

[3] It is undisputed that Ms. Maroun had no involvement in the process of approving Plaintiff's STD benefits, which was determined by Total Disability Services, a separate Aetna entity in Portland, Maine.

[4] Despite the allegations in her Complaint, Plaintiff admits that she is solely asserting a claim for retaliation under the Family and Medical Leave Act ("FMLA") in this action. (Pl.

2.   Despite Plaintiff's deposition admissions and other record evidence to the contrary (as fully set forth in Aetna's opening brief), Plaintiff states in her brief that she returned to work and suffered "retaliation for taking her leave, in the form of recriminations, intense supervision, and excessive criticism of a veteran employee. . . ." (Pl. Brief, at p. 11). Aetna finds it remarkable that Plaintiff would continue to file papers in this Court[5] which directly contradict her own testimony and the record in this case, which clearly demonstrate that Plaintiff never returned to work after August 2, 2001 and that she was never actually supervised by Ms. Maroun (or anyone else at Aetna) after she commenced her leave of absence. Moreover, for this reason, Plaintiff's reliance on FMLA retaliation cases where the plaintiff suffered tangible adverse employment actions following his or her return to work after an FMLA leave clearly is misplaced. See, e.g., Caldwell v. Holland of Texas, Inc., 208 F.3d 671 (8th Cir. 2000); Heimbach v. Lehigh Valley Plastics, 2000 WL 14871 (E.D. Pa. Jan. 7, 2000); Routes v. Henderson, 58 F. Supp. 2d 959 (S.D. Ind. 1999).

3.   Based upon the undisputed record evidence, there is simply no evidence upon which a reasonable fact finder could determine that Plaintiff was constructively discharged – i.e., that Plaintiff's working conditions were so unpleasant or difficult that a reasonable person in her shoes would feel compelled to resign. See Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir.), cert. denied, 510 U.S. 964 (1993); Overtoom v. Principi, 2003 WL 927609 (E.D. Pa. March 5, 2003) (no

---

Brief, at p. 4). Plaintiff concedes that Aetna did not deny her any FMLA benefits to which she was entitled.

[5] As set forth in Aetna's opening brief, Plaintiff also alleged in her Complaint that she returned to work after her leave.

constructive discharge where plaintiff voluntarily transferred three times and told she should look for another job). Indeed, in her own brief at page 7, Plaintiff sets forth those facts which the Third Circuit in <u>Clowes</u> and other cases has considered in determining whether a constructive discharge has occurred (<u>e.g.</u>, involuntary transfer, threats of discharge, suggestions that the employee retire or resign, demotions or reductions in pay or benefits, alterations of job responsibilities, unfavorable performance evaluations and false accusations of misconduct). None of these considerations is present on the record facts of this case.[6] Moreover, Plaintiff's argument that her issues with her co-worker and supervisor <u>prior to her leave request</u> -- which are clearly unrelated to any alleged protected activity -- could somehow be sufficient to support her constructive discharge/FMLA retaliation claim is ridiculous.

Thus, in order to support her constructive discharge/retaliation claim, Plaintiff repeatedly misstates the record evidence in this case. For example, Plaintiff states that "from the time she had gone out on disability on August 2, 2001 until submitting her letter of resignation on August 31, 2001, she had not received any benefits. . . ." (Pl. Brief, at p. 8). Indeed, Plaintiff admitted at her deposition that her initial leave from August 2 through August 7, 2001 was approved on August 20, 2001. (Ex A, Pl. Dep. At 32). By way of further example, Plaintiff inaccurately states on page 4 of her brief that she "applied for and received – albeit only after a great deal of

---

[6] Plaintiff's reliance on <u>Levendos v. Stern Entertainment, Inc.</u>, 860 F.2d 1227 (3d Cir. 1988), where the plaintiff was found to have alleged sufficient facts to avoid summary judgment on her constructive discharge claim, is readily distinguishable from the present case. There, the plaintiff, who was the only maitre'd in the defendant company, was excluded from meetings, told she "would not be there long," told she did not "fit the mold," was falsely accused of stealing, drinking and fraternizing with employees, and found wine bottles placed in her locker to make it appear that she was stealing. Such persuasive facts clearly are not present in the instant case.

4

persistence on Plaintiff's part – FMLA leave. . . ." Indeed, Plaintiff's difficulties and "persistence" related to her application to receive additional STD benefits and her failure to provide the required medical information. During this time, Plaintiff never formally "applied" for FMLA leave, but pursuant to Aetna policy, she was granted a leave of absence, her job was held open, and her health benefits were maintained while her STD claim was processed – all of which were consistent with the FMLA.

Moreover, there is no evidence that Ms. Maroun ever made any "demands" upon Plaintiff on "how Plaintiff was to exercise her leave time," or that she displayed any "hostility" toward Plaintiff. (Pl. Brief, at 8-10). Indeed, Plaintiff admits that Ms. Maroun only instructed her in late August 2001, when her request for an extension of her STD benefits (and, thus, leave of absence) had not been approved, that Plaintiff should call in each day and <u>leave a message</u> as to whether she was coming to work. On only one occasion, Plaintiff actually spoke to Ms. Maroun, during which time Plaintiff believed that Ms. Maroun was "rude." Significantly, Plaintiff testified that Ms. Maroun never threatened Plaintiff or her employment in any way, and never raised her voice toward Plaintiff. (Ex. A, Pl. Dep. At 116-17).

In sum, Plaintiff has failed to come forward with any <u>record</u> evidence to demonstrate that a genuine issue of material fact exists with respect to any of her claims. Plaintiff's own speculation and belief are not sufficient to defeat Aetna's summary judgment motion, which is rooted in both the record facts of this case (primarily, Plaintiff's own admissions) and well-established law. Accordingly, for any and all of the foregoing reasons, as well as the reasons set forth in Aetna's opening

brief, Aetna respectfully requests that its motion be granted and Plaintiff's claims against it be dismissed, in their entirety, with prejudice.

Respectfully submitted,

*Jill Garfinkle Weitz*
JILL GARFINKLE WEITZ
KLETT ROONEY LIEBER & SCHORLING
A Professional Corporation
Two Logan Square, 12th Floor
Philadelphia, PA 19103
(215) 567-7500
Attorneys for Defendant
Aetna Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2003, I caused a true and correct copy of Defendant Aetna Inc.'s Reply Brief In Support of Its Motion for Summary Judgment to be served via first class mail, postage pre-paid, upon the following:

>Donald P. Russo, Esquire
>117 East Broad Street
>P.O. Box 1890
>Bethlehem, PA 18016

_____
JILL GARFINKLE WEITZ