IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lisa Baily, | : | |
|     Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 02-5153** |
| | : | |
| Aetna Inc., | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

LEGROME D. DAVIS, J.                                                                                           OCTOBER __, 2003

    Presently before the Court is a Motion for Summary Judgment filed on February 6, 2003 by Aetna, Inc. ("Defendant") pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket Entry No. 12), a Memorandum in Opposition to Defendant's Motion for Summary Judgment filed on March 10, 2003 by Plaintiff Lisa Baily ("Plaintiff") (Docket Entry No. 14), and a Reply Brief in Support of Motion for Summary Judgment filed on March 18, 2003 by Defendant, (Docket Entry No. 15). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted.

**I.    FACTUAL AND PROCEDURAL HISTORY**

    In her Complaint, Plaintiff, a former employee of Defendant's, alleges that Defendant violated the Family Medical Leave Act's prescriptive entitlements against interference and retaliation. Family and Medical Leave Act, 29 U.S.C.§ 2601, et. seq. ("FMLA").[1]

---

[1] Specifically, in § 2615, the FMLA states, in pertinent part, that prohibited acts include:
(a) Interference with rights
(1) Exercise of rights
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter
(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for

Defendants then removed this action from the Court of Common Pleas of Northampton County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania on the ground that Plaintiff's Complaint, on its face, asserts only a claim arising under federal law, namely the FMLA (Docket Entry No. 1 at ¶6). Defendant filed an Answer to Plaintiff's Complaint on July 25, 2002 (Docket Entry No. 3). The parties completed discovery. Thereafter, Defendant filed the Motion for Summary Judgment under consideration before this Court.

### A.    Plaintiff's Work History and Environment

Aetna, Inc. employed Plaintiff from 1996 until August 31, 2001 when she alleges she was constructively discharged from her position as a Benefits Claims Specialist. The events that brought about this discharge, Plaintiff alleges, amount to retaliation for Plaintiff's use of entitled leave under the FMLA and interference with her right to take future FMLA leave. (Complaint at ¶15). Beginning in July 2001, Plaintiff's relationships with a co-worker, Edith Taylor, and her Unit 73 supervisor, Theresa Day, became increasingly strained (Pl. Dep. at 34-35). Specifically, Plaintiff found Taylor's heavy perfume use and loud personal conversations with other co-workers annoying and bothersome, an issue that Plaintiff raised with Day only. (Pl. Dep. at 34-36). Moreover, on July 26, 2001, Plaintiff complained of Taylor's behavior to Warren Furry, Day's supervisor, by e-mail (Pl. Dep. at 36-37). Plaintiff then met with Furry to discuss the

---

opposing any practice made unlawful by this subchapter
(b) Interference with proceedings or inquiries
It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual–
    (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;
    (2) has given or is about to give any information in connection with any inquiry or proceeding under or related to this subchapter;
    (3) has testified, or is about to testify, in any inquiry or proceeding related to any right provided under this subchapter..
29 USCA § 2615.

perfume use, loudness of the unit, her belief that Day provided employees with information regarding other employees, and her speculation that Day had discussed her e-mail complaint with Plaintiff's co-workers (Pl. Dep. at 37-38). Consequently, Furry assured Plaintiff that he would investigate transferring her to another unit and would discuss her concerns with Day as per Plaintiff's request. (Pl. Dep. at 47-49).

During the period between Plaintiff's initial e-mail to Furry and their subsequent conversation, Plaintiff claims that Taylor acted aggressively towards her; specifically, Taylor gave a "nasty look" and grabbed Plaintiff's worksheet. (Pl. Dep. at 46). After Plaintiff's transfer request, Plaintiff claims that Day pronounced that she "didn't care if she lost one of her best processors" (Pl. Dep. at 50-51). Finally, Plaintiff claims that as she exited on July 31, Taylor said that she "felt like smacking someone." (Pl. Dep. at 51). The following morning, Plaintiff and co-worker Heather Roche, who faced similar difficulties with her co-workers, met with Furry to discuss Taylor's comment of the previous day. He instructed the women to file a complaint with the Human Resources Department which Plaintiff filed with representative Susan Williams; she also met with Ms. Williams to discuss her strained relationship with Day and her perceived safety concern posed by working next to Taylor. With Furry's approval, Williams advised both complainants to go home and await contact from a Human Resources representative from the Blue Bell, Pennsylvania office. (Williams Dep. at 15-16).

Human Resources representative Kym Ebert telephoned Plaintiff in order to initiate an investigation of the complaint but Plaintiff refused to cooperate or provide additional information. In lieu of working with Aetna to alleviate the strained relationships with Taylor and Day, Plaintiff and Roche prepared a written internal complaint detailing the issues with the

employees in Unit 73 previously reported to Furry, Williams, and Ebert; that report was delivered to Furry by Roche on August 1 or 2, 2001 (Pl. Dep. at 60, 66, 69).

Subsequently, Ebert informed Plaintiff to expect a telephone request from Furry to report to the Allentown facility for further discussion of the issues she raised. (Pl. Dep. at 68-70). After investigating Plaintiff's complaints, Furry concluded that because Taylor addressed her "smacking" comment to no particular individual, it did not amount to a threat directed at Plaintiff. But, pursuant to her request, Aetna agreed to transfer Plaintiff to a unit under the supervision of Patricia Maroun, with whom Plaintiff had prior work experience without incident (Pl. Dep. at 71). During that conversation, Plaintiff informed Furry that as a result of a scheduled doctor's appointment, she might qualify for disability leave; in response Furry provided contact information for Defendant's short term disability ("STD") policy. (Pl. Dep. at 71).

B.     **Defendant's Benefits Plan**

Aetna provides detailed explanation of the benefits services, including those under the Family and Medical Leave Act (FMLA) and STD, in the handbooks, benefit booklets, and on-line intranet service (INTRANET) that Plaintiff received. Specifically, in 2001 the FMLA policy provided that employees who worked at least 1,000 hours in the previous year could obtain up to sixteen weeks of family and medical leave protection. This exceeds the Congressional requirements. The policy distinguished between leave taken for an employee's own serious health condition, referred to as Employee Medical Leave ("EML"), maternity leave, or leave taken for the care of a newborn or adopted baby, referred to as Family Leave ("FL"), and leave taken to care for the serious health condition of a family member, referred to as Family Medical Leave ("FML"). The policy also offered STD benefits to eligible employees who phoned the

published benefits hotline to speak with a claims processor at Total Health and Disability Services ("THD"). The employee's medical provider would be required to provide evidence to THD substantiating that the employee was unable to perform his/her employment functions. The employee bore the burden of providing such medical information, however his/her supervisor was not involved in processing a subordinate's STD request.

An employee who applied for STD need not also apply for EML (or FMLA) simultaneously. STD benefits ensure that leave time automatically qualifies as EML (or FMLA) protected, provided the employee is otherwise eligible for such protection. Thus, where an employee applies for STD, she need not file a separate request for FMLA, because the STD request is sufficient for both purposes. However, where an STD claim is denied, an employee may then file a separate claim under the less stringent requirements for EML (or FMLA). However, during the pendency of a review of an STD claim, Defendant will take no employment action against the claimant.

### C.    Plaintiff's Leaves and Complaints to Defendant

As instructed by her materials, Plaintiff telephoned the hotline, made a claim for STD benefits, and visited her primary physician, Dr. Scott Sterling, complaining of job-related stress, headaches, and dizziness. (Pl. Dep. at 74-75, 84-85). While Plaintiff suffered from these symptoms prior to August 2001, on August 6, 2001, she informed Sterling's office that she was feeling "okay;" a CAT scan on August 7, 2001 yielded normal results. (Pl. Dep. at 75, 78).

Meanwhile, the Total Health and Disability Service ("THD") attempted to process Plaintiff's claim but needed medical information that her primary care doctor would only release with her authorization. With Plaintiff's permission, Sterling could fax her medical information to

5

THD, but the STD policy dictated that THD had five days to process the claim once it received the medical information. (Motion for Summary Judgment, Ex. N, THD Log). Despite representations by Sterling that the information had been forwarded, THD did not have the records nor the medical support necessary to certify Plaintiff's STD claims. Consequently, Plaintiff's request was denied on August 10, 2001. (Pl. Dep. at 92; Motion for Summary Judgment, Ex. N, THD Log). Afterwards, Maroun telephoned Plaintiff to inform her that upon returning to work, she should report to Maroun and should provide periodic updates on her disability. (Pl. Dep. at 111-112). On August 21, Maroun sent Plaintiff notice of her eligibility benefits under the FMLA policy. (Motion for Summary Judgment, Ex. S, August 21, 2001 Memorandum from P. Maroun).

Following the denial of her initial request, Plaintiff obtained therapy for which she sought extended benefits through THD. More delays in obtaining the requisite documentation ensued. Ultimately, THD certified Plaintiff's STD benefits for August 2-7, the period of disability reflected in Sterling's records, and provided a certification decision outlining its findings and offering consideration under the FMLA. Maroun telephoned Plaintiff instructing her to inform Maroun of her intentions to work via voice-mail message each day. Plaintiff did so until August 30, 2001. On one occasion, Plaintiff failed to call until the afternoon; Maroun explained the instructions again without threatening or admonishing Plaintiff.

At no time did THD or any Aetna employee deny Plaintiff information regarding her STD claim. Plaintiff reviewed all the necessary materials to understand the application process. However, Plaintiff failed to apply for EML or FMLA. Furthermore, she did not consult the literature provided about these benefits nor did she contact a Human Resources representative

concerning EML or FMLA leave. (Pl. Dep. at 98-99). In conclusion, Plaintiff did not exercise her right to take FMLA protected leave or attempt to take additional FMLA leave while employed by Defendant.

Instead, Plaintiff continued to pursue her STD claim with Aetna alleging that she was unable to work, despite her active search for alternate employment beginning on August 21, 2001. Plaintiff applied to PMA Insurance Company, informed PMA that she sought a new position due to dissatisfaction with Defendant, and accepted a position with PMA near the end of August. Nevertheless, Defendant, continued to employ Plaintiff throughout the pendency of her STD application, held her position open, and continued benefits without interruption. In actuality, by Plaintiff's own admission, the only harassment she endured consisted of leaving 7 messages on her supervisor's voice-mail. (Pl. Dep. at 108-110).

### D.  Plaintiff's Resignation

On the last phone call to Maroun, Plaintiff reported that she would come to work on the following day to resign in writing. In the resignation, she claimed constructive discharge after work in substandard conditions, denial of benefits, and persistent anxiety. (Motion for Summary Judgment, Ex. T, Resignation Letter). After her resignation, Plaintiff continued to seek STD benefits from Defendant for the period of August 8 through August 31, 2001. A review of the medical records, including those from therapy and from Dr. Sterling, led THD to conclude that a claim for FMLA protected STD disability benefits could reasonably be approved through August 31. However, on September 10, Defendant received Plaintiff's FMLA request back-dated to the date of her resignation. Because Plaintiff had already resigned, her request was denied. While Plaintiff claims unawareness of the limitations on her FMLA claims, that ignorance is likely due

to her failure to examine the FMLA materials. (Pl. Dep. at 106). Plaintiff claims to have received misinformation from Defendant's Human Resources Department but the representative merely informed her that the STD claim was FMLA protected.

Under the guise of retaliation and interference, Plaintiff seeks to redress (1) the alleged stress she endured from two requests to her doctors for medical records, (2) the denial of her claim for STD benefits on August 20 because they were not supported by medical records; and (3) the information she received from the Human Resources department that her claim was for STD benefits and not FMLA. The Court finds that such minimal annoyance without proof of greater injury is legally insufficient to support an interference claim.

## II.   STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). Only facts that may affect the outcome of a case are "material." Anderson, 477 U.S. at 248. All reasonable inferences from the record are drawn in favor of the non-movant. Id. at 256. An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 247-49; Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp., 812 F.2d 141, 144 (3d Cir.1987). If evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-51; Equimark, 812 F.2d at 144. Where the record, taken as a whole,

could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574 (1986).

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof.  See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), cert. denied, 499 U.S. 921 (1991).  A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor.  Anderson, 477 U.S. at 248; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

### III.    DISCUSSION

#### A.    Plaintiff Fails To Establish the Elements of A Prima Facie Claim Under FMLA

While Plaintiff alleges that Defendant violated the anti-retaliation provision of the FMLA, she cannot establish the elements of a prima facie case of retaliation.  Plaintiff cannot adequately establish that she availed herself of protected rights under the FMLA, that the Defendant made a decision that adversely affected her, or that a causal connection exists between these two actions.  In the context of a retaliation claim under the FMLA, the plaintiff's prima facie case consists of a showing that he or she availed himself or herself of a protected right under the FMLA, that he or she was adversely affected by an employment decision, and that there is a causal connection between the two actions.  Morgan v. Hilti, Inc., 108 F.3d 1319, 21

A.D.D. 125 (10th Cir. 1997). The rule is alternately stated that, to establish a prima facie case for an FMLA violation, an employee was required to show that: (1) he or she was protected under FMLA; (2) the employee suffered an adverse employment decision; and (3) either the employee was treated less favorably than an employee who had not requested FMLA leave or the adverse decision was made because of the request for leave. Watkins v. J & S Oil Co., Inc., 164 F.3d 55 (1st Cir. 1998); Bocalbos v. National Western Life Ins. Co., 162 F.3d 379 (5th Cir. 1998). Here, because Plaintiff does not specifically allege an FMLA protected activity, the Court will construe her averments as arguing that taking FMLA leave constituted a protected activity. Any application for STD benefits, once granted, amounts to automatically protected leave but does not constitute an application under FMLA itself. In the In the Memorandum of Law in Opposition to Defendant's Motion for Summary Judgement, Plaintiff argues that taking the STD leave constituted a protected activity because the very act of taking leave is protected. (Docket No. 14 at 6). Even were we to accept this proposition, the request for STD leave was not only granted, it was extended beyond the scope of time for which adequate medical records were provided. That Plaintiff attempted to request back-leave under the FMLA after her resignation does not amount to a protected activity. 29 C.F.R. 825.110.

Furthermore, in order to establish her claim for retaliation required for constructive discharge, Plaintiff only alleges one adverse action by Defendant, namely the harassment and anxiety she endured. This is insufficient to establish a causal connection between the protected activity and Defendant's conduct. To establish the causal connection element of a prima facie case of retaliation under FMLA, plaintiff needs to show that the protected activity and the adverse action were not wholly unrelated, and, to show the two things were not entirely

unrelated, plaintiff must generally show that decision-maker was aware of the protected conduct at the time of the adverse employment action. Panto v. Palmer dialysis Center/Total Rental Care, 2003 U.S. Dist. 5663 at 20 (E.D.Pa. 2003). See also Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791 (11th Cir. 2000), cert. denied, 532 U.S. 1037 (2001). The Court is not persuaded by Plaintiff's argument that she endured substantial adverse action enough to establish a prima facie case of retaliation. Plaintiff does not demonstrate that Aetna took an adverse employment action at the time she allegedly took FMLA leave. The daily requirement of a phone call requested of Plaintiff was a minimal imposition required only during the pendency of her STD review. That the THD conducted an independent analysis of the STD claim that did not involve Maroun, Plaintiff's new supervisor, further suggests the disconnect between the request for leave and the requirements imposed on Plaintiff. The Court is not persuaded by Plaintiff's suggestion that Maroun's requested phone calls were an attempt to control, or even know, how Plaintiff exercised her leave. (Docket No. 14 at 9). Plaintiff only spoke to Maroun on one occasion and on all other days left a voice-mail message answering only whether she intended to work that day.

      1.     **Defendant Did Not Interfere With Plaintiff's FMLA Protections**

Plaintiff alleges that Defendant interfered with her rights provided under the FMLA. The FMLA states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). The FMLA does not define interference, but the Department of Labor regulations indicate that interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). The record suggests an opposite

conclusion. Not only did Defendant follow the necessary steps to ensure the complete and appropriate review of Plaintiff's STD request, upon the initial denial of STD leave, a representative from Human Resources informed Plaintiff that she could still pursue an FMLA request. Plaintiff chose not to do so and instead resubmitted her STD claim for further review; the THD conducted that review and approved Plaintiff for leave in excess of what the medical records indicated would be required. In addition, an employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act. 29 C.F.R. § 825.208(a)(1). Plaintiff offers no substantial support for why she allegedly took her FMLA leave; the THD expended substantial effort to obtain the necessary medical records that they ultimately used to certify Plaintiff's STD benefits for August 2-7, the period of disability reflected in Sterling's records. Although an extended absence from work has been found to be a valid reason for terminating an individual, Defendant did not compromise Plaintiff's job in any way. On the contrary, it attempted to preserve it and continued to pay Plaintiff despite its loss of productivity caused by Plaintiff's absence. Deily v. Waste Managment of Allentown, 2001 U.S. Dist. LEXIS 8555, *9-10 (E.D.Pa.) citing Cichon v. Roto-Rooter Servs. Co., 1998 U.S. Dist. LEXIS 19175 at *26 (N.D. Ill. Dec. 2, 1998) (neutral company policy of termination after two consecutive days of absence from work without proper notice was legitimate non-discriminatory reason for termination; plaintiff had no evidence to show that the policy was a pretext).

  **2.**  **Plaintiff Does Not Establish A "Serious Medical Condition" at the Time She Requested Back FMLA Benefits**

The Plaintiff's health condition has not been placed squarely at issue because Defendant

granted Plaintiff the STD leave she requested. However, she was denied the back-benefits she requested. But, a "serious health condition" is an illness, injury, impairment, or physical or mental condition that involves (1) a period of incapacity requiring inpatient care, (2) a period of incapacity of more than three calendar days, involving continuing treatment by a health care provider, or (3) continuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days; or for prenatal care. 29 C.F.R. § 825.114(a). Similarly, it requires either inpatient care or continuing treatment; the standard for "continuing treatment" has remained unchanged. Victorelli v. Shadyside Hosp., 128 F.3d 184, 189 (3d Cir. 1997) citing 29 C.F.R. § 825.114. The FMLA provides that "eligible" employees of a covered employer are allowed to take up to 12 weeks of leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition. 29 C.F.R. § 825.100(a). The FMLA applies when an employee's own serious health condition makes the employee unable to perform the functions of his or her job. 29 U.S.C. 2612(a)(1)(D). Whether the FMLA would even apply to Plaintiff in this case is doubtful. Plaintiff did not exercise her right to take FMLA protected leave or attempt to take additional FMLA leave while employed by Defendant. Plaintiff applied to PMA Insurance Company, informed PMA that she sought a new position due to dissatisfaction with Defendant, and accepted a position with PMA near the end of August. The FMLA protections should not apply because Plaintiff's alleged serious health condition did not prevent her from performing the functions of her job or from obtaining alternative employment.

### B.      Defendant Did Not Engage In Retaliatory Conduct Under the FMLA

#### 1.      Adverse Employment Action Under The McDonnell Douglas Analysis

The Plaintiff has not satisfied her burden of proving by a preponderance of the evidence a prima facie case of discrimination.  The burden-shifting framework expounded in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) applies to claims of unlawful retaliation under the FMLA.  See <u>Wilson v. Lemington Home for the Aged</u>, 159 F.Supp.2d 186, 194-95 (W.D.Pa. 2001).  The <u>McDonnell Douglas</u> framework requires that the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.  Third, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  <u>Sherrod v. Philadelphia Gas Works</u>, 209 F. Supp.2d 443 (E.D.Pa. 2002) (citations omitted).  As discussed above, Plaintiff has not sufficiently established a prima facie case for discrimination.  But, even if we assume, *arguendo*, that Plaintiff could satisfy her burden, the Defendant has articulated a legitimate reason for its actions that are not pretextual.

Plaintiff cannot establish that she suffered any kind of serious adverse employment action perpetrated by Defendant. Not every job action that creates unhappiness or that the employee finds objectionable constitutes adverse action supporting a retaliation claim.  <u>Sherrod</u>, 209 F. Supp.2d 443 at 450.  In order to succeed under this framework, Plaintiff must establish that she suffered an adverse employment action.  <u>See</u>, <u>e.g.</u>, <u>Baltuskonis v. U.S. Airways, Inc.</u>, 60 F.Supp.2d  445, 448 (E.D.Pa. 1999).  In order to constitute an "adverse employment action," the

14

retaliatory conduct alleged must be "serious and tangible" enough to alter an employee's compensation, terms, conditions, or privileges of employment, deprive her future employment opportunities, or otherwise have a "materially adverse" effect on her status as an employee. Robinson v. City of Pittsburgh, 120 F.3d 1286, at 1300-01 (3d Cir.1997); see also Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 749 (1998) (defining an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, a decision causing a significant change in benefits"); Marrero v. Camden County Board of Social Services, 164 F.Supp.2d 455, 473 (D.N.J.2001) ("In order to constitute 'adverse employment action,... 'retaliatory conduct' must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate, or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee."). Plaintiff has not satisfactorily offered proof that Defendant's actions had any effect, adverse or otherwise, on the terms, conditions, compensation, or benefits of her employment or prejudiced her ability to take advantage of future employment opportunities. Hargrave v. County of Atlantic, 262 F.Supp.2d 393, *427 -428 (D.N.J.,2003). See Weston, 251 F.3d at 430-31 (concluding that plaintiff's written reprimands did not constitute adverse employment actions where plaintiff's "own deposition testimony indicate[d] that he was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location ..., did not have his hours or work changed or altered in any way, and that he was not denied any pay raise or promotion as a result of [the] reprimands"); Mitura v. Daulton, 1999 WL 163629 at *4 (E.D.Pa. March 18, 1999) (concluding that plaintiff's negative performance evaluation could not be considered an adverse employment action in the absence of evidence that the evaluation had an

actual adverse effect on the conditions of her employment) (citing Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir.1996)); Lamacchia v. Rumsfeld, 2002 WL 31513390 at * 12 (E.D.Pa. October 29, 2002) (observing that the mere "fact that plaintiff received a negative performance appraisal alone is not enough to support a finding of an adverse employment action"); Jenkins v. Philadelphia Housing Authority, 2001 WL 1298988 at *5 (E.D.Pa. Oct.24, 2001) (observing that a written reprimand "does not meet the requirement for an adverse employment action without evidence of how such a reprimand effected a material change in the conditions of [plaintiff's] employment. A presumed effect is not enough."); Elwell v. PP & L, 2001 WL 1529063 at * 9 (E.D.Pa. Nov.28, 2001) ("the presumed or speculative effect of an evaluation, without a showing of actual harm, is insufficient to demonstrate an adverse employment action.").  The only injurious conduct which Plaintiff allegedly suffered following her August 2, 2001 submission of an STD benefits claim consisted of asking both her medical providers to re-fax her records, making seven telephone calls only one of which required a conversation with her supervisor, Maroun, and the minimal delay in obtaining certification for her STD benefits caused by the delayed medical records.

### 2.     **Plaintiff Was Not Constructively Discharged**

Despite this, Plaintiff maintained her employment with Defendant until she obtained a more desirable position with another employer.  This does not amount to constructive discharge. The Third Circuit has previously analyzed constructive discharge in the employment discrimination context under the ADEA. The court employs an objective test to determine whether an employee was constructively discharged from employment based on whether "the conduct complained of would have the foreseeable result that working conditions would be so


unpleasant or difficult that a reasonable person in the employee's shoes would resign." Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir 1992). Commonly, plaintiffs claiming constructive discharge rely on factors such as threatened discharge, demotion, involuntary transfer, alteration of responsibilities, or unsatisfactory evaluations. See e.g., Shealy v. Winston, 929 F.2d 1009 (4th Cir. 1991); Berger v. Edewater Steel Co., 911 F.2d 911, 923 (3d Cir. 1990), cert. denied, 499 U.S. 920 (1991); Buckley v. Hospital Corp. of America, 758 F.2d 1525, 1530-31 (11th Cir. 1985); Meyer v. Brown &Root Construction Co., 661 F.2d 369 (5th Cir. 1981). "The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." Clowes v. Allegheny Valley Hospital, 991 F.2d 1159 (3d Cir 1993) citing Gray, 957 F.2d at 1083 quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). Here, Plaintiff offers only a few unpleasant remarks from co-workers, the inconvenience of reporting to her supervisor, and a short delay in obtaining benefits. She complained to her supervisors about a coworker and was accommodated with a transfer as per her request. At no time does Plaintiff offer substantive evidence that the Defendant created such a difficult environment for Plaintiff that her reasonable option was to resign.

### 3. The Defendant Articulated A Legitimate Non-Discriminatory Reason for Its Conduct

The only requirements imposed on Plaintiff ensured that in the interim period between her request and the final review of her STD claim, the supervisor would have an accurate expectation of productivity in her unit. The purposes of the FMLA include "(1) to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving fairly integrity; [and] (2) to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a

child, and for the care of a child, spouse or parent who has a serious health condition;..." FMLA § 2(B)(1), (2); 29 U.S.C. § 2601(B)(1), (2). This court finds that pursuant to Defendant's policy, Plaintiff was granted a leave of absence, her job remained open, and her health benefits were maintained. Defendant accommodated Plaintiff while following the procedures necessary to promote her stability and economic security while considering the demands of its business.

### 4. Plaintiff Does Not Establish That The Reason Offered by Defendant Is Pretextual

Finally, the facts provided do not support a conclusion that Defendant's concerns about productivity and attempts at protecting Plaintiff's interests were pretextual reasons for discrimination. In determining if the reasons proffered by Defendant are pretextual, the court will consider whether sufficient evidence exists from which a jury could conclude that the reason for defendant's adverse employment actions was in actuality a pretext for intentional discrimination. At trial, the plaintiff would need to convince the trier of fact "*both* that the reason was false and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original). A plaintiff may defeat a motion for summary judgment (or judgment as a matter of law) by pointing "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Jones v. School District of Philadelphia, 198 F.3d 403, 410 citing Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994). In order to survive summary judgment under the Fuentes/Sheridan inquiry, a plaintiff may point to evidence in the record which "allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32

18

F.3d at 764.  Or, the plaintiff must show that the articulated reason was "so plainly wrong that it cannot have been the employer's real reason."  <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997).  Plaintiff provides no such evidence that would allow the Court to infer discriminatory motivation or determinative cause.  Interestingly, the decision-makers were not those individuals with whom Plaintiff took issue, and immediately following her complaint, she was transferred to a new unit.  All Human Resources and management personnel acted consistent with ensuring that Plaintiff receive the benefits to which she was entitled.

## IV.    CONCLUSION

Based on the foregoing reasons, the Plaintiff did not meet her burden in establishing a prima facie case. She did not adequately provide evidence that would support either an interference or a retaliation claim under the FMLA.  Had she done so, the Defendant had a legitimate non-retaliatory reason for its conduct for which no pretext existed.  Consequently, summary judgment in Defendant's favor is warranted on all claims.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lisa Baily, | : | |
|     Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 02-5153** |
| | : | |
| Aetna Inc., | : | |
|     Defendant. | : | |

## **ORDER**

AND NOW, this   day of October, 2003, upon consideration of the Motion for Summary Judgment filed on February 6, 2003 by Aetna, Inc. ("Defendant") pursuant to Rule 56 of the Federal Rules of Civil Procedure (Docket Entry No. 12), the Memorandum in Opposition to Defendant's Motion for Summary Judgment filed on March 10, 2003 by Plaintiff Lisa Baily ("Plaintiff") (Docket Entry No. 14), and the Reply Brief in Support of Motion for Summary Judgment filed on March 18, 2003 by Defendant, (Docket Entry No. 15), it is hereby ORDERED that the Motion for Summary Judgment is GRANTED and JUDGMENT is entered in the above action for Defendant Aetna, Inc.

BY THE COURT:

_____
Legrome D. Davis